I'm Timothy Scheffler. I represent Plaintiff Appellant Gary Wrolstad. I would like to reserve approximately three minutes for rebuttal. We're here today to appeal a grant of summary judgment that was issued in favor of Defendant DiPelli Cuna Mutual Insurance on both age and retaliation claims. The age claim itself is a more traditional sufficiency of the evidence review. It's the retaliation claim, however, that presents a more novel question related to procedure in determining a statute of limitations and as such I'm... Are you conceding the age claim? No, I just think that the argument on the retaliation claim is more of a legal error by the district court versus how the legal, how the district court applied the evidence in the age case as to whether or not a jury could find in favor of Mr. Wrolstad. And the problem arises because over the last four decades Delaware State College v. Ricks has guided the determination of a statute of limitations and discrimination case when it comes to an adverse employment action. In particular, Ricks held that the date that an employer determines that it will take an adverse action and communicates that to the employee is when the clock for a and the action being carried out are indispensably part of a single employment action. Didn't the Supreme Court in that case emphasize that the discriminatory action alleged in the complaint was the denial of tenure? Yes. As opposed to yours where you are saying that the retaliatory action was two separate discriminatory acts or retaliatory acts, one of which we did not actually raise in our complaint. We just did the latter, the raising of the suit, not the threatening of the suit as well. And that's why Amtrak v. Morgan becomes fairly important because it actually determines that each new discrete discriminatory act starts its own clock for the statute of limitations. So in this case we allege that the filing of the suit was a discrete discriminatory act, particularly because the threat alone could have started its own basis for a claim. And this is where we say at the most fundamental level the district court erred. It found that the retaliatory action of communicating an intent to sue and then eventually going to court and suing Mr. Rolstad was a single transaction just the same as making a decision to terminate an employee and eventually show them the door. And it's from other types of discrimination. I'm puzzled by the contention that it is possible to recover damages against somebody for filing a lawsuit. The Supreme Court held, well the whole Norr Pennington doctrine establishes that people have a constitutional right to file lawsuits and therefore that activity cannot be penalized. So how is it that there could be an award of damages for threatening to sue and then carrying out the threat? Because in this case, your honor, Congress in the older... I'm not asking about this case. The Supreme and listen, the Supreme Court held that there is a constitutional right under the First Amendment to litigate. Congress can't override the Constitution. You have to deal with the Norr Pennington doctrine on its own terms. How could a claim for damages based on the filing of a lawsuit be reconciled with the Norr Pennington doctrine? In this case, your honor, the... I'm not asking about in this case. I'm asking in general. In general, a party certainly does have a right to file a lawsuit. However, there are limitations about when, where, and how lawsuits are filed as to whether or not it's appropriate, which is why, for instance, sanctions can be awarded in cases when those... When the claim is frivolous. So is it a part of your contention that any claim based on the language of the release is frivolous? In this case and the way that they filed it, your honor, yes, because it sought to circumvent the Older Workers Benefit Protection Act, which prohibits take-back lawsuits, which is what they filed. Waivers are valid, but whether the waiver is valid is a question on the merits. Are you saying that any lawsuit based on a waiver of bringing later litigation is not simply a mistake but frivolous? I mean, that contention would itself be frivolous. Is there some case that you have that establishes that any and every lawsuit to enforce a waiver by an employee is a condition of receiving severance benefits is frivolous? No, your honor. I don't have any such law that would say that all cases are frivolous. Do you have any saying that any particular such case is frivolous? I don't have any that say that they're frivolous. However, courts have maintained... that CUNA's was frivolous. No, your honor. Well, without that allegation, I don't see how you'd get anywhere under the Norah Pennington Doctrine. Your honor, we filed it and it was not an argument before the... It is a constitutional rule, right? You have to make allegations bearing on the preconditions to suit. We seem to be... We're here arguing an irrelevancy given the Norah Pennington Doctrine. Norah Pennington Doctrine makes it almost impossible to succeed on any claim for damages based on someone else's filing a lawsuit. And you don't seem to have recognized that you were laboring against a very heavy wind. In this case, your honor, we did rely on the fact that the nature of the lawsuit, the take-back lawsuit, has been recognized and is a routine cause of action in cases because of protections that Congress extended. Certainly, if this lawsuit arose completely outside of the context of Mr. Rolstad's complaint, this was CUNA Mutual's attempt to circumvent the Madison Equal Opportunities Commission as a EEOC agency and stop their investigation of this case. And what's the problem with that? If your client waived the right to do that as a condition of receiving 50 weeks pay, then enforcing the waiver is perfectly normal behavior. Otherwise, your client wouldn't have gotten the pay. Now, there by tendering back the benefit received as a condition of the waiver, which I gather didn't happen here. No, because that actually is not required under the Older Workers Benefit Protection Act, your honor. But turning to the actual statute of limitations decision rather than the merits, which the underlying court did not reach, in particular, there's a problem in saying that the was going to file a lawsuit and threaten Mr. Rolstad with such lawsuit. It was only until Mr. Rolstad waited for that threat to be realized or see what actually came of it that he started his own clock to determine it. CUNA maintained in the district court essentially accepted a theory that when a plaintiff tells a defendant that they intend to sue them, if certain demands are not met, then that starts the clock for an adverse action. And that theory flies in the face of established law that retaliatory threats and the retaliatory actions are cognizable as separate claims, but it also flies in the face of a bedrock principle that a lawsuit starts when it's filed with the clerk at the courthouse. No employment plaintiff could have their attorney write a demand letter to a corporation saying that they want their any action necessary to make them whole and then claim that that's satisfied their burden for the statute of limitations. It's when they file the case that their 300-day clock is counted. You don't get to toll the statute of limitations by just saying that you intend to sue somebody overall. And the lawsuit threat that CUNA has is substantially different from the A employee certainly has cause to suspect they're a victim of retaliation or discrimination on the day that they're told unequivocally that they're losing their job, because that decision is the adverse employment action, not the last day of work. The impact on the employee doesn't change. And that makes sense because employment actions by and large have to demonstrate a tangible harm, which usually is defined as hitting an employee somewhere in the pocketbook. The standard serves as a good gatekeeper for the courts, and Smith v. Potter, this court recognized this application of Rick's because a claim only accrues with certainty, and in such employers have to give unequivocal notice of an adverse act, which means the communication demonstrates that the decision is final, ultimate, and non-tenative. Right, and this was an unequivocal threat to sue. It was and that triggers the accrual of the statute of limitations. In this case it was an if-then statement, which is kind of the hallmark of conditionality as when it comes to logic. If Mr. Rolstad had dropped all of his claims, both those covered by the waiver and those not covered by the waiver, because they also threatened him... Right, when he received this notice he had ample reason to believe that he was being discriminated against for his pursuit of this claim in the teeth of the waiver. That's what started the limitations clock under the accrual rule that's established nationally and in this circuit, once that unequivocal decision is made. And what we argued was that the if-then statement makes it not certain and unequivocal, because if Mr. Rolstad had complied with them, they said that he would not be sued. That's very similar to when the 11th Circuit handled Stewart v. Booker T. Washington insurance, where they noted particularly that the use of if was the important phrase, because if an employee would be fired if certain circumstances took place later, then the courts would be forced and the EEOC would be forced to deal with hypothetical cases... There was nothing hypothetical about this. There was an ongoing action in the Madison Regulatory Agency for these sorts of matters, and the question was whether the lawsuit would be filed if that litigation were continued, because the right had been waived. So there was nothing equivocal about the threat here. We would argue that the nature of the letter being similar to a cease-and-desist letter or a demand letter, and with a condition being imposed, it's unequivocal that... If he continued. That he continued, it would happen. However, it was not necessarily certain what he would be sued for. There was no doubt about that. They raised the waiver, but they demanded as part of the remedy that Mr. McClain's that weren't subject to the waiver. So they were demanding far more as compensation. Right, that goes to the merits of the scope of the waiver, the enforceability of the waiver, but it doesn't go to the accrual rule. He was on unequivocal notice that he would be sued, and that started the clock. The issue that we have with that as well is that this type of construct would also allow an employer to tell an employee, if you file a lawsuit against us, or if you seek a remedy with the EEOC, we will sue you in the future. This would allow them to file a lawsuit well past 300 days of that initial threat, where an employee has no actual harm experienced at that point other than the threat itself, which is why if both the threat and the filing are discrete acts of retaliation, the Rick's rule becomes inapplicable because that is different from Rick's, in which the college says one year from today will be your last day. There's no immediate harm. There's employment for another year. The Supreme Court held in Rick's that that statement starts the clock, because it says what's going to happen in the future, definitively. And in that case, the last day that Mr. Rick's had worked was inexplicably tied with the threat itself, whereas the lawsuit as a discrete act and the threat of the lawsuit as a discrete act should have experienced two different clocks, recession limitations. And I'll reserve the rest of my 45 seconds for rebuttal. Thank you, counsel. Mr. Tilkens. Good morning, and thank you, your attorney, Melissa Williams, counsel for appellee CUNA Mutual Insurance Society. Today, I'll refer to the appellee as CUNA Mutual. I'll start with a discussion of the points raised by the court in connection with the retaliation claim. This case involves employment claims. Like all employment claims, employer motive and decisions by employers in connection with motive are an element of every claim. And the statute of limitations doctrine in connection with employment claims has been clear. Delaware State College versus Rick's has been the law of the land for decades. And in connection with that decision, with only two exceptions, one for hostile work environment claims under the Morgan decision as enunciated by Justice Thomas, and two, the statutory exception for Lilly Ledbetter Act claims are the only two exceptions to the rule that the statute of limitations in connection with an employment claim begins to run when the alleged unlawful decision is communicated to plaintiff. Mr. Rolstad's court believe that separate and discreet acts of discrimination, when communicated to a plaintiff, somehow involve a new statute of limitations that would run at the beginning of every effect that follows the communication. And from the Morgan decision, he has constructed an argument that there is a doctrine for take-back lawsuits. Filing a lawsuit is a legal right in every state. He responds to that by arguing that retaliation is somehow different because the filing of suit is not merely an effect of a decision to file a suit, it is a wrong in and of itself. This is the take-back argument that we've heard in argument counsel for Mr. Rolstad. The argument was not developed below with no mention in the summary judgment. Well, as you heard, I have some difficulty with the underlying proposition in light of the North Pennington Doctrine. Did you raise the North Pennington Doctrine in the district court? No, Your Honor. I think that's an affirmative defense? Yes, Your Honor. Okay, so it's forfeited. Well, I'm concerned about how this particular thing was, okay, if you don't drop your appeal, we're going to file a lawsuit. Does this carry over to, does it make any difference what the threat is? What if somebody makes a threat and if you're saying no matter what that threat is, if it is, you know, retaliation for pursuing rights under federal law, under the employment sections of federal law, that starts the statute of limitations and there can't be anything else. What if you got some nutty employer who says, if you don't drop your lawsuit, I'm going to burn your house down. 320 days later, I mean, the employee says, that's ridiculous. Nobody, everybody knows this guy's nuts and wouldn't do this. I'm not going to drop my lawsuit. This is, this is not, this is not a threat of retaliation that bothers me. Do you have to always be bothered? I suppose you could take it the other way, that it's something really small, but you're saying that always is going to start the statute of limitations and there can never be another discreet act. Thank you, Your Honor. What I'm saying is that the communication of an alleged adverse employment decision, and here the allegation is that threatening to file the lawsuit was an act of alleged retaliation. Upon communication to the employee or ex-employee, that begins the statute of limitations for all employment claims. And in this case, the alleged employment claim is retaliation. And so, when Mr. Rolstad argues that there is a separate statute of limitations that should begin with each separate and discreet act, and here that could only be the notice in the December 22nd letter and the January 2011 lawsuit. What he's essentially asking for is two clocks for the allegations in this case. And that runs directly contrary to the language in the Morgan case, where that, where separate and discreet actions were only afforded a different statute of limitations because in a hostile work environment claim, the individual acts by themselves are not unlawful. Therein lies the nature of a hostile work environment claim. It's the collection or the totality of those individual acts by themselves not unlawful. And I'll read from the court. As Justice Thomas articulated, each retaliatory adverse employment decision, I repeat decision, constitutes a separate actionable unlawful employment practice. In this case, it's the decision that gives birth to a retaliation claim. And there's only one decision in this case. And it was the decision to file a lawsuit against Mr. Rolstad, a decision that was announced to him unequivocally. And finally, on December 22nd of 2010. And because of that, the Riggs doctrine squarely applies to the fact pattern here, and the district court was correct in applying it to the allegations. The bottom line with Mr. Rolstad's invitation to this court is that it would result in no repose, because as No matter how far out those effects are felt in here, we've got eight years of litigation. So suppose another eight years of litigation followed the filing of the lawsuit from Unimutual. When judgment is issued, following Mr. Rolstad's argument, no matter how far out those effects are felt, there would still be a clock waiting for him at the end of that. Mr. Rolstad also argued in connection with questions raised by Judge Sykes, that the decision here in December of 2010 was not a final and non tentative decision. It was conditional. This court answered that issue in the Azelby Potter case. The presence of the condition does not mean that an alleged wrong did not occur when it was announced. And in any event, in this case, there's more, because the condition was satisfied on January 10th of 2011, when the fuse expired on its own terms. Mr. Rolstad also indicates the decision was not final, because Unimutual did not state a legal theory, no authority for that position. He says it was not final, because no date of filing was listed. There's no authority for that position. He states it was not unequivocal, because it was just an opening volley for negotiations. There's no authority for that position. He states Unimutual should have attached a firm decision to sue, somehow, does not automatically create secondary impacts. There's no authority for that position. And in fact, it's contrary to the Azel case, the Mull case, the Draper case, and the Allman case. Respectfully, Unimutual asked this court to agree with the decision issued by Judge Peterson, that the retaliation claim was properly dismissed with a claim that was not part of the argument offered by counsel for Mr. Rolstad. Nearly all of the allegations before this court on age were arguments that were not presented to the district court below, and none of them, with the exception of two, can be considered now. The two that are new, or the two that were raised below are, or Mr. Rolstad accuses the district court of improperly inferring that Rolstad was not qualified for the job. But what the court actually found was that he was qualified, and that being qualified does not itself create a triable issue of fact. He had to prove his selection was unlawful, not that he was qualified or not qualified, because competitions regarding qualifications are not for the jury. I take it there was rather limited discovery in this case. Is that correct? There was discovered depositions, but it wasn't what we've seen with other federal litigation. Secondly, Mr. Rolstad argues on the age claim before this court, that the district court improperly inferred that his salary demand was a determining factor. But the district court held that Mr. Rolstad had the burden to prove that age was the but for reason for selection, and he didn't meet that burden. Most of Mr. Rolstad's argument on age were never presented to the district court, and being qualified does not by itself create a triable issue of fact. The district court got it right with regard to the age claim as well. I have no further argument for the court. Thank you. Thank you, counsel. Anything further, Mr. Scheffler? Yes. In response to the two age related issues brought up by CUNY's counsel, a jury question on qualifications is actually a possibility. Two cases cited by CUNY themselves, Millbrook and Malinchik, both say that it can be a triable issue if the qualifications are superior enough to cause a question. In this case, CUNY had two individuals part of the hiring process, one of whom identified him as overqualified, and the other not qualified enough to deserve an interview. So the hiring process should be enough that the jury could consider a question as to whether or not pretext was involved in the decision to not give Mr. Rolstad an interview when two individuals had such a diverse view of his qualifications. And as to the salary claim, there was evidence that it did not necessarily get communicated at any point as a reason for the hiring decision until the individual making the hiring decision noted it as part of and claimed a memory of it. At no point in the earlier EEO process was it mentioned. Thank you very much, counsel. The case is taken under advisement.